```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____
EILEEN M. CLAFFEY,

                    Plaintiff,
                                                    07-CV-6430
           v.
                                                    DECISION
WEGMANS FOOD MARKETS, INC.,                         and ORDER

                    Defendant.
_____
```

### INTRODUCTION

Plaintiff Eileen M. Claffey ("plaintiff") brought this action under 29 U.S.C. § 2617 claiming that defendant Wegmans Food Markets, Inc. ("defendant") interfered with her rights under the Family and Medical Leave Act ("FMLA") and retaliated against her for exercising her FMLA rights. Defendant moves for summary judgment on both claims. Specifically, plaintiff alleges that defendant failed to provide her with part-time work to accommodate her while she tended to a family member. Alternatively, plaintiff maintains that defendant interfered with her full-time leave when it scheduled her to work before her leave ended. Plaintiff also alleges that defendant created intolerable working conditions that forced her to resign.

Defendant moves for summary judgment on the grounds that there are no material facts in dispute and that as a matter of law, plaintiff has failed to establish an interference or retaliation claim under the FMLA. For the reasons set forth below, I grant defendant's motion for summary judgment.

## BACKGROUND

Plaintiff was an employee of defendant from 2002 to February 7, 2007. In 2005, plaintiff began working at defendant's Ridgemont store. She received some training as a cashier, but primarily worked in the accounting office. In October 2005, plaintiff began a training program to work as a full-time Accounting Office Coordinator-Trainee. Training for the accounting office requires forty hour weeks with trainees working at various times of the day in order to learn the tasks that arise at different times and days. This program allows trainees to gain the knowledge and skill sets necessary to complete the various tasks including preparing and closing cashier's tills, lottery, payroll, etc. Trainees are not permitted to work alone, except in emergency situations. Initially, this program requires six months of training, but that period may be extended based on a trainee's progress.

Plaintiff began her training program in late October 2005. In June 2006, plaintiff, still a trainee, met with an Accounting Manager about her progress in the program. The Accounting Manager believed plaintiff could not perform the requisite level of duties to graduate from the training program. In August 2006, a new Accounting Manager, Beth Snyder ("Snyder"), took over and reviewed plaintiff's performance records and observed plaintiff. Snyder decided to re-train plaintiff over the next eight weeks along with Assistant Manager Elaine Cornish ("Cornish") and others during

2

October and early November 2006. Snyder noted that although plaintiff improved she still lacked the ability to work unsupervised. See Snyder Decl. ¶ 22.

In November 2006, plaintiff decided to limit her availability to take care of a family member. On November 16 plaintiff informed Paul Fiorica ("Fiorica"), the Employee Representative, of her request and filled out a form indicating that her new availability was from 7 p.m. to 11 p.m. on Mondays, Wednesdays, Thursdays and 6 a.m. to 6 p.m. either Saturday or Sunday. Fiorica informed plaintiff he would discuss her availability with Snyder. Given the busy holiday season and plaintiff's training needs, Snyder informed Fiorica that it would be too difficult to schedule plaintiff in the accounting office. Plaintiff was removed from the schedule. See Snyder Decl. ¶ 23-27.

On December 4, 2006, Fiorica spoke with plaintiff regarding this issue and Fiorica offered her a temporary position as a cashier. See Fiorica Dec. ¶ 17. Plaintiff refused this offer. See Claffey Tr. 28-30. The cashier position would have had the same pay and benefits as plaintiff's trainee position. See Fiorica Dec. ¶ 17. At the December 4 meeting, plaintiff notified defendant that her job was protected under the FMLA. Thereafter, Fiorica provided plaintiff with a FMLA request form which plaintiff completed and returned indicating that her FMLA leave was effective November 16, 2006 to February 17, 2007. Defendant granted plaintiff FMLA leave

on December 27, 2006, retroactive to November 16, 2006.

On December 22, 2006, plaintiff presented Snyder with a new availability form indicating that she was able to work Monday thru Friday, 6 p.m. to 11 p.m, and one day on the weekend. Defendant's store is traditionally less busy in January, and it often schedules only one person to work in the accounting office. Snyder maintains that due to plaintiff's inability to work alone in the office and the seasonal hours, it could not schedule her to work. See Snyder Decl. 31-32.

On January 27, 2007, plaintiff presented a new availability form indicating she return to work full time and work from 6 a.m. to 11 p.m. on Mondays, Fridays, Saturdays, Sundays, Holidays, and from 6 a.m. to 4:30 p.m. on Tuesdays. The form was signed and dated on January 27, 2007. See Defendant's Ex. O. The new availability sheet did not indicate that plaintiff's availability would begin at any time other than the week of January 27, 2007. According to plaintiff, she submitted the January 27 form as a courtesy to Snyder, as the person in charge of the schedule, so that Snyder would be aware of plaintiff's availability when she returned to work full time beginning February 17, 2007. See Claffey Tr. 32:10-12. However, plaintiff did not communicate this to Snyder, but instead simply placed the form in Snyder's mailbox. See Claffey Tr. 32:17-18; Defendant's Ex. O. In addition, plaintiff never contacted Snyder or Fiorica to discuss her new availability or when it was to

4

begin, but gave them only the form to work with. Given this new availability that plaintiff was ready to return to work, Snyder scheduled plaintiff to work forty hours the following week starting February 4, 2007. Fiorica called plaintiff to inform her of the new schedule and plaintiff did not object during this conversation. See Claffey Tr. 32:20-25, 33:1-12.

On February 4, 2007, plaintiff arrived for work, as scheduled, in the accounting office. Plaintiff worked along with Assistant Manager Cornish throughout her shift without mentioning her FMLA leave or being upset about returning to work. See Claffey Tr. 38:5-10. Plaintiff called in sick the next day. On February 7, 2007, three days after returning to work full time, plaintiff resigned, stating that she felt compelled to leave because of the intolerable working conditions.

Plaintiff argues that defendant interfered with her FMLA rights when it refused to schedule her for work during her intermittent leave. Alternatively, plaintiff maintains that defendant knew about her FMLA leave extending to February 17, 2007, and that scheduling her prior to that expiration interfered with her FMLA rights. Defendant contends that given the pattern of plaintiff's behavior, i.e. submitting new availability forms throughout her approved leave, the lack of a specific effective date on the form, and plaintiff's failure to communicate her true intent, it was left to conclude that plaintiff wished to return to

5

work full-time. In addition, defendant maintains it was not feasible to schedule plaintiff in the accounting office on a part-time basis and that it offered plaintiff a temporary position that would accommodate her request for leave while allowing her to work on a part-time basis.

## DISCUSSION

### I. Defendant's Motion for Summary Judgment on FMLA Claims

A party is entitled to summary judgment if it can demonstrate "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." See Fed.R.Civ.P. 56(c). On a motion for summary judgment, the court must consider "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986). Once the movant has " 'show[n]' " or "point[ed] out ... that there is an absence of evidence to support the nonmovant['s] case," the burden shifts to the nonmovant. See Celotex Corp. v. Catrett, 477 U.S. 317, 325-27 (1986). To discharge this burden, "a plaintiff must come forward with evidence to allow a reasonable jury to find in his favor" on each of the elements of his prima facie case. See Lizardo v. Denny's, Inc., 270 F.3d 94, 101 (2d Cir.2001).

The court must draw all factual inferences in favor of the party against whom summary judgment is sought and view the factual

assertions in materials such as affidavits, exhibits, and depositions in the light most favorable to the nonmovant. See Anderson, 477 U.S. at 255; Celotex Corp., 477 U.S. at 322. However, a nonmovant benefits from such factual inferences "only if there is a 'genuine' dispute as to those facts." See Scott v. Harris, 550 U.S. 372, 127 S.Ct. 1769, 1776 (2007). The law is well established that "conclusory statements, conjecture, or speculation" are insufficient to defeat a motion for summary judgment. See Kulak v. City of New York, 88 F.3d 63, 71 (2d Cir.1996). The nonmovant cannot survive summary judgment simply by proffering "some metaphysical doubt as to the material facts," Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986), or presenting evidence that "is merely colorable, or is not significantly probative." See Savino v. City of New York, 331 F.3d 63, 71 (2d Cir.2003) (quoting Anderson, 477 U.S. at 249-50, (citation omitted)). Rather, he must "set out specific facts showing a genuine issue for trial." See Fed.R.Civ.P. 56(e)(2); see also D'Amico v. City of New York, 132 F.3d 145, 149 (2d Cir.1998) ("non-moving party may not rely on mere conclusory allegations nor speculation, but instead must offer some hard evidence showing that its version of...events is not wholly fanciful."

"[A] party may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's previous deposition

7

testimony." <u>Hayes v. New York City Dept. of Corrections</u>, 84 F.3d 614, 619 (2d Cir. 1996). "If a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact." <u>Perma Research & Dev. Co. v. Singer Co.</u>, 410 F.2d 572, 578 (2d Cir.1969). Thus, factual issues created solely by an affidavit crafted to oppose a summary judgment motion are not "genuine" issues for trial. <u>Id.</u>

### A. **Interference Claim**

Employers covered by the FMLA are required to grant leave to eligible employees to care for the employee's spouse, son, daughter, or parent with a serious health condition. 29 U.S.C. § 2612(a)(1). An employee is generally entitled to her same position or its equivalent upon returning from leave. § 2614(a)(1). Employers are prohibited from interfering with the rights provided by the FMLA. § 2615(a)(1).

To establish an "interference" claim under the FMLA, a plaintiff must prove: (1) she is an eligible employee under the FMLA; (2) the defendant is an employer under the FMLA; (3) she was entitled to take leave under the FMLA; (4) she gave notice to the defendant of her intention to take leave; and (5) that she was denied benefits to which he was entitled under the FMLA. See <u>Alessi v. Monroe County</u>, 2010 WL 161488, *8 (W.D.N.Y. 2010).

The first four elements are not in dispute. With respect to the fifth element, plaintiff argues she was denied her FMLA rights when defendant failed to schedule her in the accounting office during the period from November 16, 2006 to February 4, 2007. Plaintiff, however, does not dispute that Fiorica offered her shifts as a cashier to accommodate her new schedule and that she refused such shifts.[1] See Claffey Tr. 28-30. Plaintiff contends that the cashier position was a demotion and form of punishment. While it is true that an employer may not offer a temporary position to dissuade an employee from taking leave, CFR 825.204(d), the record in this case belies plaintiff's contention. Plaintiff stated that she had been trained as a cashier, and she occasionally did cashier work in the accounting office. See Claffey Tr. 29:18-25. The FMLA states that an employer may require an employee take a temporary position. § 2612(2). Plaintiff completely ignores this provision, instead arguing that defendant could have scheduled her during the evening hours as a trainee in the accounting office and that the cashier position would in no way help her learn the duties of the accounting office. "However, maintaining an individual's employment in a position best suited to her education is not the purpose of the

---

[1] Under the FMLA, an employee taking intermittent leave may be required to accept a temporary transfer to an alternative position. 29 U.S.C. § 2612(b)(2) (2006); 29 CFR 825.204. "The alternative position must have equivalent pay and benefits," but not the same duties. 825.204(c). The employee must be qualified for the alternative position, and the position cannot be offered to discourage the employee from exercising her rights. § 2612(b)2; 825.204(d). The parties dispute whether plaintiff's leave was "intermittent" or "full-time." This distinction is not critical because regardless of the type of leave, defendant offered plaintiff a temporary position prior to and after her official request for leave, which plaintiff categorically refused.

FMLA." Vlahos v. Xippolitos, 272 F. App'x 100, 104, 2008 WL 925329, *3 (2d Cir. 2008).

Moreover, the U.S. Department of Labor has stated that an employee who refuses a transfer in the absence of an adverse effect cannot be protected by the FMLA. See Wage & Hour Div., U.S. Dep't Lab., 1994 DOL FMLA LEXIS 19, *3-4 (Aug. 23 1994). The DOL letter states that the transfer cannot have an adverse effect on the employee. For instance, the transfer cannot be to a distant location where the employee might be unable to commute. The regulations also provide that the transfer cannot work a hardship on the employee. 29 CFR 825.204(d). Plaintiff was offered a position in the same store, with the same pay and benefits, with duties that she performed as a trainee in the accounting office. Contrary to plaintiff's contention, the Court notes that this can hardly be considered a form of punishment.

Further, under the FMLA, once plaintiff returned from intermittent leave, the law entitled her to a full-time position in the accounting office or its equivalent. In this regard, it is undisputed that defendant restored plaintiff to her position in the accounting office when she returned from her leave. See Claffey Tr. 33:21-23. Because plaintiff has failed to provide evidence of a genuine issue of material fact, defendant's motion for summary judgment on the interference claim is granted.

Plaintiff alternatively claims interference with her full-time

FMLA rights when defendant scheduled her to work on February 4, 2007. However, plaintiff does not dispute that the January 27, 2007 availability form failed to indicate an effective date for her return to work. Plaintiff stated under oath that the prior availability forms she submitted, i.e., November 16, 2006 and December 22, 2006, took effect immediately. <u>See</u> Claffey Tr. 23:3-4, 80:6-23. Accordingly, it was plaintiff's own actions that precipitated defendant calling her back to work. Plaintiff's claim that defendant, in following the January 27 availability form, somehow interfered with approved leave is without merit. If the employee provides "reasonable notice" to the employer of her intent to return, the employer could potentially be liable for violating the FMLA rights in delaying restoration. <u>See</u> <u>Hoge v. Honda of America Mfg., Inc.</u>, 384 F.3d 238, 250-51 (6th Cir. 2004) (finding employer *must* restore employee to previous position after receiving reasonable notice of intent to return). Here, plaintiff is attempting to hold defendant liable for violating either the restoration or interference provisions of the FMLA due to an ambiguity she created in filling out the January 27 availability form that she submitted to defendant. The Court finds that defendant met its obligations under the FMLA when it restored plaintiff to her pre-leave position based on the information it had before it.

### B. <u>Retaliation Claim</u>

To recover under a retaliation claim, a plaintiff must prove

that: 1) she exercised rights protected under the FMLA; 2) she was qualified for his position; 3) she suffered an adverse employment action; and 4) the adverse employment action occurred under circumstances giving rise to an inference of retaliatory intent. Potenza v. City of N.Y., 365 F.3d 165, 168 (2d Cir. 2004). Retaliation claims, unlike interference claims, are analyzed under the familiar McDonnell Douglas burden-shifting framework. Id. Because plaintiff fails to make a prima facie case for retaliation, summary judgment is granted in favor of the defendant.

Plaintiff claims that she suffered an adverse employment action because work conditions compelled her to resign. Plaintiff's resignation letter stated that she constructively discharged herself because no reasonable person could be expected to keep working under the work conditions presented to her.

"To establish a constructive discharge, plaintiff must show that her employer deliberately made her working conditions so intolerable that she was forced to resign." Alfieri v. SYSCO Food Services--Syracuse, 192 F. Supp.2d 14, (W.D.N.Y. 2001) (citing Stetson v. NYNEX Serv. Co., 995 F.2d 355, 360 (2d Cir.1993)). In short, "a claim of constructive discharge must be dismissed as a matter of law unless the evidence is sufficient to permit a rational trier of fact to infer that the employer deliberately created working conditions that were 'so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled

12

to resign.'" Id. at 361 (quoting Pena v. Brattleboro Retreat, 702 F.2d 322, 325 (2d Cir. 1983). The Supreme Court notes that objective criteria should be used to determine constructive discharge. See Penn. State Police v. Suders, 542 U.S. 129, 141 (2004).

Plaintiff's retaliation claim is without merit. Plaintiff does not dispute that during the February 2, 2007 phone call with Fiorica she never communicated her concerns about returning to work early. See Claffey Tr. 32:20-25, 33:1-12. In addition, plaintiff does not dispute that she returned to work on February 4, 2007 and worked without complaint. See Claffey Tr. 38:5-10. In fact, she worked along with Assistant Manager Cornish throughout her shift without mentioning her FMLA leave or being upset about returning to work. See id. The day following her return to work, plaintiff called in sick. Finally, on February 7, 2007, a mere three days after returning to work full time, plaintiff resigned, stating that she felt compelled to leave because of the intolerable work conditions. The Court finds that plaintiff has failed to provide evidence that working conditions at defendant's store were objectively intolerable giving rise to a claim of constructive discharge. I, therefore grant defendant's motion for summary judgment with respect to plaintiff's retaliation claim.

## **CONCLUSION**

For the reasons set forth above, defendant's motion for summary judgment is granted and plaintiff's Amended Complaint is dismissed

with prejudice.

**ALL OF THE ABOVE IS SO ORDERED.**

                                                  <u>s/Michael A. Telesca</u>
                                                   MICHAEL A. TELESCA
                                          United States District Judge

Dated: Rochester, New York
       March 2, 2010